Case number 22-1163, et al. Hospital Menonita de Guayama, Inc. Petitioner v. National Liberal Relations Board. Mr. Moldoni for the petitioner, Ms. Beard for the respondent. Good morning, Your Honors. Patrick Moldoni on behalf of the petitioner Hospital Menonita de Guayama. At my table with me, at the council table, is my law partner, Megan Martin. And can you hear me okay? Great. As the panel is aware, we're here on remand from the Supreme Court for reconsideration of this court's prior decision denying review of the board's order, of the board's order fining an unfair labor practice in connection with the withdrawal of recognition of the majority status of five separate units represented by the same union. And we're here to consider it in light of Loper Bright. We would posit that this is the exact case that the Supreme Court had in mind when it issued Loper Bright. That we have here in a situation where the petitioner took over the operations of a hospital, where there were five separate units, five separate bargaining units all represented by the same union, none of which had an extended, had executed a collective bargaining agreement for years prior to the acquisition. In fact, two of those units had never entered into a collective bargaining agreement. While initially recognizing the union as the representative of each unit in accordance with applicable law, Supreme Court precedent, a majority of each unit expressed that they no longer wanted the union to represent them, which prompted the petitioner to withdraw recognition and which prompted the union to file an unfair labor practice charge. At the ALJ hearing, the board implemented, the ALJ implemented the successor bar doctrine with an irrebuttable presumption of majority status. Tony, so we're familiar with the procedural background. So are you here challenging the lawfulness only of an irrebuttable presumption or also a rebuttable? Does the NLRB have any statutory authority here to have even a rebuttable presumption as a successor bar? We would, at least in an initial blush, go along with Judge Katsas in his concurrence that there's a question as to whether in fact the board had the authority to issue this kind of presumption rebuttable or irrebuttable. However, at the very least, we believe there should, at the very least, if the court would believe that the board had the authority to issue some type of of presumption, it should be a rebuttable one. It's the only one that makes sense. It's the best, it would be, I think the best reading of the statute per the Loper-Bright decision and what Chief Justice Roberts said in his opinion, the best reading would be... What is, what are the terms of the statute that you're interpreting? Excuse me? Sorry, Your Honor. What terms of the National Labor Relations Act are you interpreting? It's the Section 7 rights of employees to engage in concerted activity to seek representation or to refrain from doing so. I mean, that's the key... Is it 8A1 and 8A5 too? Well, that would be the violation, I mean, the violations that are being alleged here are 8A1 and 8A5. And so we are arguing that that was improperly found, that the unfair labor practice for 8A1 and 8A5 were improper because the ALJ applied what we believe is a presumption that's contrary to the act itself. Where in the language of Section 7 can you find the distinction that you make between rebuttable and irrebuttable? Well, Your Honor, again, our position is that we don't think there should be a, there should be a presumption at all. But again, the irrebuttable versus rebuttable, the board historically has waffled between the two of them. The Sixth Circuit at one point did, I think it's the Landmark case, did find that the rebuttable presumption was under the review, the current review standard at the time, which was again, was pre-Loeb or Bright, was permissible, that they upheld the rebuttable presumption. The sequence of events was that your client first recognized the union and then the decertification petition came in? What happened, Your Honor, was they first recognized the union as the successor because they had hired a majority of the employees in each unit. And then over the period of the next months, they received petitions and letters from majorities in each of the units. And I think, in fact, in some of the units, it was even every particular member of the unit saying they did not want to be represented by the union. So they withdrew recognition. What about the Supreme Court cases that have upheld other so-called bars to an election, like the so-called contract bar that's been upheld? I mean, how do we make sense of those precedents in light of your statutory argument? Right. Well, I think... Are those cases wrong too under Loeb or Bright? Well, I would take the position, obviously, that there's an argument under Loeb or Bright that they are. But even if we were to say they were not, the other types of bars that have been put out there are really sort of tied to the election bar that's actually in the statute. Contract bar isn't so much tied to the election bar. I think that there's... Let's put it this way. There's more connection between the contract bar and the election bar than there is between the successor bar. Because again, it has to do with the initial formation of a contract and the relationship of an agreement during the term of that agreement between the representative who bargained for it for the employees and the employer. And here at the last election, I mean, they hadn't had a contract even with the unions for a number of years. Right. And in fact, to the extent that the board has argued that they're trying to protect the bargaining relationship, there wasn't one to protect. There hadn't been any contract that was formed for several years. And stepping into the shoes of the successor, the petitioner receives indication from the various units, all five of them, that they don't presume an ineffective representation. What is your position with respect to the... At the end of LOPR, and I don't recall whether you addressed this in your brief or not, but at the end of LOPR, Chief Justice Roberts said this, we do not call into question prior cases that relied on the Chevron framework. The holdings of those cases that specific agency actions are lawful, including the Clean Air Act and Chevron itself, are still subject to statutory stare decisis despite our change in interpreted methodology. What argument do you have that this overcomes statutory stare decisis? Besides Chevron, because the holding in LOPR is that following Chevron in the past is not enough to overcome statutory stare decisis. So what is your argument? Your Honor, in connection with this particular issue, the only extent that there's stare decisis amongst the courts would be the Sixth Circuit that approved a rebuttable presumption. There is no case that, I guess, prior to the Lilly transportation case and the prior panel here in this court that found, in fact, that the irrebuttable presumption was appropriate. The panel here was vacated by the Supreme Court. Correct, correct. And again, our case is currently active, so I would say there's really no stare decisis applicable here in the sense of this case is still going on. So I think the court's free to issue a decision recognizing LOPR and applying LOPR in an appropriate way. We could rule for you and still preserve the language in previous precedents that says the statute gives the board discretion to make labor policy. That's correct, Your Honor. When you look at the cases that were decided previously, a number of those Supreme Court cases dealt with issues of factual determination, which LOPR doesn't change. LOPR says that if there's a factual determination by the board, as long as it's supported by evidence. Okay, I agree. And then this is something of a technical question. I think in one of the briefs, it says the hospital purchased the assets of its predecessor and voluntarily recognized the union that represented five separate bargaining units. That voluntary recognition of the union, did that happen kind of automatically once the old employees were rehired? Or after they were rehired, was there then a sort of voluntary affirmative act by the successor of the new company to say, we recognize the union? I think the record shows some correspondence back and forth between the union and the petitioner. And it was as they were hiring on employees. I mean, so obviously, you're saying it's more the second. It was an express, explicit, affirmative statement by the company. We voluntarily recognized the union. We'll sit down and meet with you and bargain over the terms and conditions. Thank you. Thank you, Rasha. Good morning, Heather Beard for the National Labor Relations Board. I'd like to start with a statement that my friend on the other side made, which I agree with in part. He said that this is the exact case that the Supreme Court had in mind. I agree with him up till that point. He then said, in Loeb or Bright, and I would add to that sentence, this is the exact case the Supreme Court had in mind not to be disrupted by Loeb or Bright or affected by an overturning of Chevron, but the Supreme Court for 90 years talking about the board and its authority from Congress to set labor policy. I think you can argue that maybe the Supreme Court didn't have this case in mind either way, but hard to say they had affirming this case in mind when they decided Loeb or Bright since they immediately after Loeb or Bright vacated the panel decision. I'm not sure we could read anything textually into their vacating the earlier decision and grant and doing a GVR in terms of the fact that Loeb or Bright came out and there had been an allegation by my opponent that the original panel had talked about or had relied on Chevron. Our position has been the earlier decision, which I know was vacated, did not rely on Chevron. And the National Labor Relations Board does not rely on Chevron. Loeb or Bright overturned Chevron and Chevron was one new form of deference that the court said in Loeb or Bright had never before prior to that been used or adhered to. And in those cases where the Supreme Court, in fact, and Allentown Mack was a case which upheld the presumption. So Ms. Beard, I mean, the Supreme Court and our court has recognized that the NLRB has a certain amount of interstitial rulemaking or policymaking authority. The question is, do they have the statutory authority to do the presumption in this case? And so to that point, I'd like you to, I mean, where is the authority in the National Labor Relations Act for this type of, I mean, the board refers to it as a time bar, but it's not really a time bar. It's really suspending the operation of the NLRA for a period of time. And where does the board have the authority to do that under the statute? Sure. Let me back up for one second. You had asked the question of stopping the NLRA. I would disagree with that respectfully, that it's actually effectuating the NLRA to have a bar for labor stability. So that's number one. And where that is, right, that question we would submit is not what is before this court, because the Supreme Court has already resolved that the board that Congress has decided that the Congress has decided that the NLRA has the authority to make labor policy in not only labor policy for labor stability to balance section 151 of the act, which talks about collective bargaining for labor stability, but with section seven of the act. You're not answering my question. So, I mean, let's look at the statute, okay? Not just the general policymaking, right? So section seven, employees have a right to collective bargaining through representatives of their choosing. Section 9A says representatives have to be chosen by a majority of the employees. And what the successor bar does here is prevent employees from exercising section seven and 9A for a period of time after there's a successor employer, right? It basically suspends the ability to choose a representative by a majority for a period of time. So where in the act is there an authority to suspend those provisions of the National Labor Relations Act? Sure. Well, in the act, the board under section 160A is empowered to prevent any person from engaging in any unfair labor practice affecting commerce. How is it an unfair labor practice for an employer to say, I'm going to recognize or call for an election or whatever to make sure that there's a representative by a majority? I think that the Supreme Court has already answered that question in the Osceolo case, which upheld the contract bar, which is a similar, you want to call it a bar or an irrebuttable presumption, saying that there can be a suspension sometimes in the balance, that the board is the agency that Congress specifically and consciously entrusted with balancing stability in labor relations, giving the employees under section seven the... So that's a pre-Loper case, and it's not this particular board doctrine. It's a different doctrine. It's a Supreme Court decision on a doctrine based on the same labor stability principle. And it's a Supreme Court decision, which was not disturbed, wasn't talked about explicitly in Loper, and it's a Supreme Court decision that comports very much with Allentown map, which... You still haven't given me any statutory reason. So Loper says the first question, and frankly, honestly, I think this was even the question under Chevron. I don't think Loper actually so much necessarily changes the outcome in this case. But the first question always is, did the agency have the authority to do what it did? And you have not yet pointed me to any source of authority for this successor time bar. Sure. I'm going to... If I may, Your Honor, if I can respectfully point you to some really good authority in Loper itself, which is... Statute. Let's go to the statute. Right. Well, Loper talks about the statute. It says that... It doesn't talk about the NLRA. Let's talk about this statute and what the court did here. Where is the authority under the NLRA? Sure. Well, as again, I don't know that the authority under the statutory piece is necessary here where the Supreme Court has already said it exists. I would like you to show me what is the NLRA authority. If you don't have it, then I'll just... No, I mean, I think what the Supreme Court was doing in those cases was looking to the National Labor Relations Act as a whole as a statute that was passed back in 1935 with the statutory provisions that empower it to determine whether or not there is an if Congress has given such discretion to an agency. The National Labor Relations Board sets labor policy because Congress decided it should. You don't have any statute. I disagree with you. The statutory authority is in Section 160A, Section 160C, where it says that the board shall be of the opinion that any person named in the complaint has engaged in a ULP. Then the board states its findings. You take 160A together with 160C, the preamble, Section 151, about stability and... So you're claiming that the board can override, for general reasons of labor stability, any specific provision of the National Labor Relations Act? Absolutely not. You have not explained to me why this general authority allows the board to suspend Section 7 and Section 9A. So if you don't have a statutory provision, that's fine. I'll stop asking you, but you keep saying you do have one and you don't give... I'm sorry, Your Honor. Respectfully, I think that I have given you the statutory provisions in the Act, Section 156, Section 160. So just the general authority. So the board can kind of do whatever it thinks ensures labor stability. No. The board has to, and that's the part of this case maybe that Judge Walker was talking about. Once there is a congressional authorization from the statute, and we think, again, this has been settled by the Supreme Court that there is for Congress to delegate labor policy, that does not mean the NLRB wins. There are two parts of LOPR which say, in that situation, what this court should do is take a look to ensure that what the NLRB did was police the boundaries of what its delegation is and do it within the statute and do it with reasoned decision-making, which is consistent with the APA. So the agency gets to police its statutory... No, no, no. The agency... This court can decide whether... I'm sorry, I misspoke. This court gets to police whether the agency has acted within those boundaries. And the court has the ability to police whether the agency has exceeded them. And I think what, from back in the UGL case, back in 2011, when the board explicitly and thoroughly explained why it is that the successor bar, like the other bars before it, provides a labor stability and that it gives a balance, that that is reasoned decision-making. That's fine. I'm not getting the... I'll accept any... It sounds like you're saying there are lots of provisions in the act that together provide you the authority to do what you did. Is that fair? I think I'd add one thing to that, Your Honor, and I would add to that, plus the Supreme Court saying that Congress delegated this. Okay. But other than that, setting that aside, what I'm arguing is that, yes, the structure of the act with all of its provisions and how it acts, absolutely. And there's no barrier in this to... And then among those many provisions that provide you the authorization, which is the best provision for you? Okay. I would say section... I mean, it's hard to pick because together, when you pull a thread from the statute, it's difficult. And all of them give the board the authority to be the agency that creates national labor policy with judicial review for rational and consistency. So I would say that my best authority is the Supreme Court for 90 years, and the statutory authority would be sections 160A, 160... What is the best statutory provision for you? I'm not saying you have to rely entirely on it. I'm just saying... For me personally, what's the best one? What statutory provision best supports your argument that the NLRB had the authority to do what it did? 160. Okay. And what does it say? 160A, the board is empowered to prevent any person from engaging in any unfair labor practice affecting commerce. And 160C says, the board, if upon the preponderance of testimony taken, the board shall be of the opinion any person has engaged in or is engaging in any such unfair labor practice, then the board shall state its findings of fact and issue an order requiring such person to cease and desist from such unfair labor practice. And that gets reviewed by... Does that give the board the authority to define anything as an unfair labor practice? Well, if we want to talk about defining the unfair labor practices, those are defined in the statute in section 8. So is there an unfair labor practice for a successor employer to have to... Yes, there's an unfair labor practice that says a refusal to bargain with a representative of of employees, it's section 8A5 in section 8. Right, a representative, but the board then defines... The board is like saying that an employer, you know, successor employer has to wait to figure out, you know, can't recognize a majority representative. Well, first, it's not the board only that's saying that. I mean, the Supreme Court said in Fall River Dying that a rebuttable presumption, the Supreme Court said and authorized the board to have the authority to do that. And that kind of a presumption, a rebuttable one, is one apparently my opponent agrees is something the board is authorized to do. So now we're left with can the board create an irrebuttable presumption? How long is this presumption irrebuttable? The presumption is irrebuttable either if when the two scenarios, if like happened here, if hospital men in need of a successor comes in and decides that it is going to recognize the employees like it did, it's a minimum of six months. And it can be extended up to 12 months, but those are the outer boundaries. From six months to a year, what the board has decided... Who decides whether it should be extended? In terms of what is reasonable, this court's decision actually in Lee-Lomber talks... Six months is about to expire. Right. Okay. Who decides whether that gets extended at 12? Well, the parties would decide if they decided that it was too law, if one of them did it past six months and in 12 months would have been more reasonable, that would be something that they would argue about. And possibly the general counsel of the board would issue a charge if it was or wasn't reasonable. But that's exactly identical, like I said, to the bars and the bargaining order bars that this court is blessed... After an election, what's the bar by statute? The union gets a majority vote. What's the bar then? Right. After the union is certified, it's one year. One year. 12 months. Does that apply to union authorization cards too? You mean when the union presents a majority of cards and the employer records... The employer doesn't have a, quote, good faith doubt about the union's majority status? Does the one-year bar kick in? There is what we call the voluntary recognition bar, which is... My understanding as of right now, there is such a bar, but there have been proposals and rules proposed to give 45 days to an employer to come in and say, we do think that there is a doubt. So that's a difference. So why doesn't that, rather than six months to a year, why doesn't that, the voluntary recognition bar, why doesn't that apply? Well, here, at least, this case, what was litigated and what the board found was that this was a failure to bargain based on the fact that there was a successor and that successor bar is what the board considered. But to the extent the employer had made any such argument that there should have been... The employer voluntarily recognized the union. Right, but that wasn't based on cards. That was based on its successor. I understand that. It was because they hired a majority of previous employers. Right, and they agreed they did that, right. I don't understand why the... That's voluntary recognition. Why doesn't the voluntary recognition apply at 45 days? Because under the case law and in the Fall River Dye case, which talked about a rebuttable presumption, the law that is applied under the successor bar that the board has applied is not a voluntary recognition bar. When there's a successor that comes in and there's been a union in place and that union here had been in place for many years, what the bar that the board has always applied is the successor bar. I don't think that anyone has raised an issue like that in this particular case, nor do I think that that... I haven't raised the issue. I just wonder why. Sure. I'm not sure of the answer to that other than the precedent with the successor bar. Just out of curiosity, if the Attorney General called the General Counsel at NRB on behalf of the President and said, confess error in this case, what would happen? Okay. Can you say that one more time? The Attorney General calls the NRB General Counsel, I think it's William Cowan, and says, the President wants you to confess error in this case. I think you would have to ask Mr. Cowan. He's subject to removal by... Well, he's the acting General Counsel, and I know that there's cases that have held that the General Counsel of the National Labor Relations Board is subject to removal by the President at will. That's what I can tell you. We didn't get too much on the statute, but you were relying on the Supreme Court's decision in OCLO. In that case, that did involve a contract bar, but the opinion as I read it was a relatively narrow opinion, which suggests that the employer there was not entitled to an exemption from that rule. The Supreme Court in that case, I'm not sure if... I don't think it was challenged, the contract bar, and the Supreme Court certainly didn't affirm the contract bar. They just said that the employer there was not entitled to an exemption. So I'm not sure how that case necessarily... I mean, besides the fact that that bar is different from the successor bar, the reasoning of that case, I'm not sure particularly supports what's happening. Sure. I would argue that it does and that there is no sort of... If the NLRB was suspending operation of the NLRA by impinging so hard on employee Section 7 rights that they can't have an election, if that was how the labor stability was balanced, I don't think that OCLO could come out the same way with the same language used. I will point you though, if you don't like OCLO in that regard, Brooks, which is the Supreme Court decision from 1954 about the certification bar, that there is very similar language in that case from the Supreme Court about why a short temporary bar, it does not impinge on employee Section 7 rights as much as what it does is balance. It's a reasonable and reasoned decision-making way to talk about the between the employees and their representative having a period of stability for the collective bargaining agreement to work, to have labor peace. The certification bar seems to me to be well-supported by the statute because you have to have a way of reading 9C1 and 9C3 together. And the certification bar seems to be a way of reading those two provisions together. Well, what the court said in Brooks- It doesn't need to have a general policy-making authority for the board. Sure, but I think any balancing that the board is going to do in stability of collective bargaining relations, and then when, as I think it was in Osceola when the Supreme Court said, when an employer says, I think my employees don't want the union, it's almost inimical to rely on an saying, my employees don't want the union, and therefore we should not have the relationship in the collective bargaining anymore. So I think that for all of the cases where there's been some balancing by the board, with regard to the labor representative and do the employees not want the labor representative, is I think there may not something be directly on point upholding the successor bar in this case, but certainly, as the Supreme Court said in Allentown Mac, the board can adopt counterfactual presumptions, and as long as they are subject to reasoned decision-making and are reasonable, they should be upheld. And the board, sometimes the courts say, Supreme Court said in Allentown Mac, we don't think the board did something reasonable here. But all throughout the line of cases the Supreme Court was saying is that the board has the ability to balance those parts of the statute, and that's what happened in this case. And we think under Loper, the board exercised its discretion in a way that was consistent with the statute and rational, and we would ask that you uphold the board's decision. Thank you, thank you. Mr. Robani, we'll give you two minutes on rebuttal. Very good. Mm-hmm. Judge Rau, your discussion of the Asiello case, I would just add on to what you had said was that that case really, if you look at it, is really more of a bad faith bargaining case, because what happened was they agreed the union, they had given an offer to the union, and then all of a sudden said, oh, we have this doubt as the majority. And the board, found against the employer on that. But there's an interesting footnote, footnote six. It says, we note in the unusual circumstance in which evidence leading to the employer to harbor such a doubt in terms of, such a doubt at the same time the union accepts an offer, that being a doubt of majority status, the board has agreed to examine such occurrences on a case-by-case basis. So even in Asiello, the board's operating under the assumption that it would, that case-by-case analysis makes sense, which is the same issue here, where you have a finding, a finding of, you know, finding of loss of majority status after success, after the bargaining relationship between the successor and the union commenced. So I'd argue that that would belie what the board's arguing. As to the, as to the Loper-Bright's applicability to prior case law involving the NLRB, first of all, this case, when you look at the Lilly case, Chevron is all over the Lilly case. Justice Souter, in his opinion, relies heavily on Chevron, and the panel here relied heavily on Lilly Transport. So Chevron is in play. But even so, while you have prior Supreme Court decisions, they need to be reviewed through the prism of Loper-Bright, because that's the pronouncement of the Supreme Court on how the judiciary is to address administrative decisions and administrative rulings of law. One other point I would just make that on the Allentown, the Allentown case, that was, again, a fact-finding issue. In fact, and even in Loper-Bright, the fact-finding standards— Not only that, but the NLRB lost. They lost, yes. I don't understand why that's, you know, put out as some kind of case that supports. And I would agree with you, I would agree with you, Your Honor. But again, even if you take that as a supporting precedent, it supports on a fact-finding issue, not on a finding of law, which the successor bar here is clearly a legal finding. I mean, I think the Lilly Transportation case, I think Justice Souter actually said that and made it clear. So we would argue, Your Honor, we would argue that the court should invalidate any—we would, at the very least, invalidate the irrebuttable presumption. We would be more than happy to see the court get rid of the presumption entirely, but at the very least, be able to send it back to the board, have an adequate and evidentiary hearing where our evidence is considered, and that we have it. And so respectfully ask that the court grant— What is the situation that has occurred during all this lengthy litigation? Is the company or the hospital bargaining with the union now? No, the union is not—no, there's no bargaining going on. The employees are, from all reports, are happy with the terms and conditions. And the union has not really been very present. I think the last—maybe the last time they really had any substantive hearing about anything from the union directly was when this court previously made its ruling. But since then, it's not been—there's still no bargaining relationship. There wasn't one before we came in, and there isn't one now. Thank you. Thank you very much.
judges: Henderson; Katsas; Rao; Walker; Edwards; Randolph